UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
THE HISPANIC LEADERSHIP FUND, INC. and
FREEDOM NEW YORK,

                            Plaintiffs,

                  v.

NEW YORK STATE BOARD OF ELECTIONS,
JAMES A. WALSH, Co-chair New York State Board
of Elections, DOUGLAS A. KELLNER, Co-chair
New York State Board of Elections, EVELYN J.
AQUILA, Commissioner of New York State Board of
Elections, GREGORY P. PETERSON,
Commissioner of New York State Board of Elections,

                         Defendants.
-----------------------------------------------------------------

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE
<u>COMPLAINT</u>**

Case No.:  1:12-CV-1337 (MAD/TWD)

Kenneth A. Manning, Esq.
 -- Of Counsel --

PHILLIPS LYTLE LLP
*Attorneys for Defendants*
*Douglas Kellner and Evelyn Aquila*
3400 HSBC Center
Buffalo, New York   14203-2887
Telephone No.:  (716) 847-8400

BROWN & WEINRAUB, PLLC
*Attorneys for Defendants*
*James Walsh and Gregory Peterson*
79 Columbia Street
Albany, New York  12210
Telephone No.:  (518) 427-7350

Justin E. Driscoll, Esq.
 -- Of Counsel --

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................II

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

      POINT I.

          PLAINTIFFS LACK STANDING TO ASSERT THEIR CONSTITUTIONAL
          CLAIMS, BECAUSE THEY FAIL TO SATISFY THE "CASE OR
          CONTROVERSY" REQUIREMENT OF ARTICLE III OF THE UNITED
          STATES CONSTITUTION.................................................................................. 4

      POINT II.

          PLAINTIFFS' CLAIMS ARE NOT RIPE FOR ADJUDICATION, BECAUSE
          NO REAL, SUBSTANTIVE CONTROVERSY EXISTS BETWEEN THE
          PARTIES ............................................................................................................ 8

          A.     Plaintiff's Claims Are Not Fit for Adjudication ......................................... 9

          B.     The Record Fails to Establish Any Hardship That Plaintiffs Would Suffer
               in the Absence of Review. ....................................................................... 12

      POINT III.

          IN ALTERNATIVE TO THIS ACTION'S DISMISSAL, THE COURT
          SHOULD GRANT DEFENDANTS LEAVE TO ENGAGE IN EXPEDITED
          DISCOVERY..................................................................................................... 15

CONCLUSION.................................................................................................................... 17

<u>**TABLE OF AUTHORITIES**</u>

<u>Page</u>

**<u>CASES</u>**

<u>Abbott Labs. v. Gardner</u>, 387 U.S. 136 (1967)...........................................................................8, 9

<u>Action Apt. Ass'n, Inc. v. Santa Monica Rent Control Bd.</u>, 509 F.3d 1020 (9th Cir. 2007)........13

<u>Allen v. Wright</u>, 468 U.S. 737 (1984)...........................................................................................4

<u>AMSAT Cable Ltd. v. Cablevision of Conn.</u>, 6 F.3d 867 (2d Cir. 1993)........................................9

<u>Babbitt v. United Farm Workers Nat'l Union</u>, 442 U.S. 289 (1979)...............................................4

<u>Bordell v. Gen. Elec. Co.</u>, 922 F.2d 1057 (2d Cir. 1991) ..............................................................5

<u>Bronx Household of Faith v. Bd. of Educ. of City of N.Y.</u>, 492 F.3d 89 (2d Cir. 2007) ...............9

<u>Brooklyn Legal Servs. Corp. B v. Legal Servs. Corp.</u>, 462 F.3d 219 (2d Cir. 2006)....................5

<u>Califano v. Sanders</u>, 430 U.S. 99 (1977) ......................................................................................8

<u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147 (2d Cir. 2002)......................................................3

<u>Connecticut v. Duncan</u>, 612 F.3d 107 (2d Cir. 2010) ...................................................................9

<u>Dermer v. Miami-Dade County</u>, 599 F.3d 1217 (11th Cir. 2010).........................................5, 6, 7

<u>Elend v. Basham</u>, 471 F.3d 1199 (11th Cir. 2006) ............................................................6, 7, 13

<u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167 (2000) .................5

<u>Gardner v. Toilet Goods Ass'n</u>, 387 U.S. 167 (1967) ...................................................................9

<u>Harrell v. The Florida Bar</u>, 608 F.3d 1241 (11th Cir. 2010)..................................................10, 12

In re <u>Drexel Burnham Lambert Group Inc.</u>, 995 F.2d 1138 (2d Cir. 1993) ..................................9

<u>Int'l Action Ctr. v. City of New York</u>, 587 F.3d 521 (2d Cir. 2009)..........................................4, 5

<u>Laird v. Tatum</u>, 408 U.S. 1 (1972)................................................................................................5

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555 (1992) ...................................................................4

Marchi v. Board of Cooperative Educational Services of Albany, Schoharie,
    Schenectady, & Saratoga Counties , 173 F.3d 469 (2d Cir. 1999) ...................... 10, 12, 14

National Organization for Marriage, Inc. v. Walsh ("NOM"), 2010 WL 4174664
    (W.D.N.Y. 2010) ................................................................................................. 11, 12

Nutritional Health Alliance v. Shalala, 144 F.3d 220 (2d Cir. 1998) .................................. 8, 9, 14

OMG Fid., Inc. v. Sirius Tech., Inc., 239 F.R.D. 300 (N.D.N.Y. 2006) ...................................... 15

San Diego County Gun Rights Cmte. v. Reno, 98 F.3d 1121 (9th Cir. 1996) ........................ 9, 13

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998) ......................................................... 4

Steffel v. Thompson, 415 U.S. 452 (1974) ................................................................................... 5

Sutliffe v. Epping School District, 584 F.3d 314 (1st Cir. 2009) ............................................. 6, 7

Thomas v. City of New York, 143 F.3d 31 (2d Cir. 1998) ............................................................ 9

United States v. Leon, 203 F.3d 162 (2d Cir. 2000) .................................................................... 4

Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.,
    454 U.S. 464 (1982) ............................................................................................................ 5

Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383 (1988) .................................................... 5

**STATUTES**
Election Law Article 14 .............................................................................................................. 2

N.Y. Election Law Article 14 ........................................................................................ 1, 2, 11, 14

**RULES**
Fed. R. Civ. Pro. 12 ...................................................................................................................... 1

Fed. R. Civ. Pro. 26 ..................................................................................................................... 15

## PRELIMINARY STATEMENT

Defendants James Walsh and Douglas Kellner, sued in their official capacities as Co-chairs of the New York State Board of Elections ("Board of Elections"), and Evelyn Aquila and Gregory Peterson, sued in their official capacities as Commissioners of the Board of Elections (collectively, "Defendants"), submit this Memorandum of Law in support of their motion to dismiss the Complaint of Plaintiffs Hispanic Leadership Fund, Inc. ("HLF"), and Freedom New York ("FNY") (collectively, "Plaintiffs"), pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6); or, in the alternative, to grant Defendants leave to pursue expedited discovery .

In two respects, the Complaint fails to present the "case or controversy" required by Article III of the United States Constitution.  First, the Complaint fails to allege how Defendants' conduct has caused Plaintiffs to suffer any injury in fact.  Second, Plaintiffs' claims are unripe for adjudication.

## STATEMENT OF FACTS

On August 28, 2012, Plaintiffs filed the Complaint, seeking an order declaring unconstitutional the definition of a "political committee" in New York Election Law ("Election Law") § 14-100(1), and the limits set forth in Election Law §§ 14-114(8) and 14-116(2) on contributions to a political committee.  (A copy of the Complaint is attached as Exhibit A to the accompanying affidavit of Kenneth A. Manning, Esq., sworn to on September 9, 2012) ("Manning Ex. ___").  The next day, Plaintiffs served the Complaint on the Defendants – viz., the Board of Elections and its Co-chairs and Commissioners.

The Complaint contains few material factual allegations.  It describes HLF as a "non-partisan 501(c)(4) organization incorporated in Virginia that actively speaks on the salient

issues of the day" (Complaint ¶ 6); broadcasts its message through "television, radio and print advertisements" (id. ¶ 13); and makes "contributions to like-minded organizations" (id. ¶ 14). According to the Complaint, HLF wishes to expand its advocacy by making "occasional independent expenditures" (id. ¶ 18) and contributing amounts exceeding $5,000 to New York political committees, FNY among them (id. ¶ 17).  HLF alleges that it has not done so to avoid being construed as a political committee, which would entail, inter alia, registering as such with the Board of Elections and periodically disclosing its contributions and expenditures.  See id. ¶¶ 18–20.

FNY claims to be a "Type 9, unauthorized committee registered with the Board of Elections that promotes conservative approaches and principles to salient New York issues." Complaint ¶ 7.  FNY wishes to "solicit and accept" corporate contributions exceeding the $5,000 limit set by Election Law § 14-116(2) and individual contributions exceeding the $150,000 limit established by Election Law § 14-114(8).  Id. ¶¶ 22, 23.

In contrast to the scarcity of material facts, the Complaint is replete with conclusory statements concerning the application of Election Law Article 14.  For example, the Complaint declares that:

- FNY is an "independent expenditure-only" organization (Complaint ¶ 7), without explaining how its prior or planned expenditures are "independent;"

- FNY "desires to accept contributions in excess of $150,000 from individual contributors" (id. ¶ 23), without demonstrating its ability to raise those funds; and

- "HLF's major purpose is issue advocacy" (id. ¶ 15).

In support of this last assertion, the Complaint proclaims that HLF "has never [made] and does not plan on making any contribution to any candidate for any office."

Complaint ¶ 17.  A search of publicly available data demonstrates that this statement is misleading.  In 2011 alone, HLF's own political action committee donated $1,000 to Texas Republican Congressman Bill Flores, $500 to Florida Republican Congressman Mario Diaz-Balart, and $5,000 to Texas Republican Congressman Francisco Canseco.[1]  Manning Ex. C.  Notwithstanding these donations, the Complaint describes HLF's activity as only "tangentially campaign related."  Complaint ¶ 47.

The Complaint is most notable for what it does <u>not</u> allege:  specific facts describing the conduct in which Plaintiffs wish to engage.  Plaintiffs offer only the bare assertion that the Election Law impinges upon their First Amendment freedoms of speech and association.  Complaint ¶¶ 20, 26.  The Complaint fails to allege any facts supporting this belief.  FNY has not begun to raise any money from individual contributors, HLF has not made any expenditures in New York, and Plaintiffs offer nothing to substantiate that they will fund solely independent expenditures in New York elections.  Id. ¶¶ 18, 22.

## ARGUMENT

This Court should dismiss Plaintiffs' action because they lack subject-matter jurisdiction, for at least two reasons.  First, the Complaint fails to establish Plaintiffs' standing, in that it does not allege how any actions by the Board of Elections or its Commissioners caused or threaten to cause Plaintiffs to suffer an injury in fact.  Second, this case is not yet ripe because,

---

[1] The contributions of HLF's political action committee to candidates for federal office are properly before the Court.  On a motion to dismiss, the Court may consider not only the allegations pled in the complaint, but also any "documents that are referenced in the [c]omplaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken."  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  HLF is certainly aware of its political action committee's Federal Election Commission filings that reflect donations to the campaigns of Republican members of Congress.

aside from applying self-serving and conclusory labels to their intentions, Plaintiffs have given

no indication of the type of conduct in which they plan to engage.

## POINT I.

**PLAINTIFFS LACK STANDING TO ASSERT THEIR CONSTITUTIONAL CLAIMS, BECAUSE THEY FAIL TO SATISFY THE "CASE OR CONTROVERSY" REQUIREMENT OF ARTICLE III OF THE UNITED STATES CONSTITUTION**

Because federal courts lack the power to render mere advisory opinions, exercise

of federal jurisdiction under Article III of the United States Constitution depends on the

existence of a justiciable case or controversy.  United States v. Leon, 203 F.3d 162, 164 (2d Cir.

2000).  A complaint must present a "case or controversy within the meaning of [Article] III of

the Constitution" to be suitable for consideration by a federal court.  Babbitt v. United Farm

Workers Nat'l Union, 442 U.S. 289, 297 (1979).  Standing is "perhaps the most important"

element of the Constitution's case-or-controversy requirement.  Allen v. Wright, 468 U.S. 737,

750 (1984).  The "triad of injury in fact, causation, and redressability constitutes the core of" that

"requirement, and the party invoking federal jurisdiction" – Plaintiffs in this case – "bears the

burden of establishing its existence."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103

(1998).  Accord, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Int'l Action Ctr.

v. City of New York, 587 F.3d 521, 529 (2d Cir. 2009).

Plaintiffs lack standing to pursue their claims against the Board of Elections Co-

chairs and Commissioners because the Complaint fails to allege any injury in fact, the first

required element of standing.

To establish an injury in fact, Plaintiffs were required to allege that they had

"personally suffered some actual or threatened injury as a result of" the conduct of the Board of

Elections or its Commissioners.  Valley Forge Christian College v. Ams. United for Separation

of Church & State, Inc., 454 U.S. 464, 472 (1982).  Such injury must have been "concrete and

particularized" and "actual or imminent," but "not conjectural or hypothetical."  Int'l Action Ctr.

v. City of New York, 587 F.3d at 529 (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.

(TOC), Inc., 528 U.S. 167, 180 (2000)).

      The injury that Plaintiffs allege is a restricted ability to speak and associate.

Complaint ¶¶ 1, 20, 26.  Although "it is not necessary that [a plaintiff] first expose himself to

actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise

of his" First Amendment rights (Steffel v. Thompson, 415 U.S. 452, 459 (1974)), the supposed

"chill" on Plaintiffs' speech constitutes an injury in fact only if Plaintiffs have "an actual and

well-founded fear that the law will be enforced against them" (Virginia v. Am. Booksellers

Ass'n, Inc., 484 U.S. 383, 393 (1988) (emphasis added)).  Whereas "a claim of specific present

objective harm or a threat of specific future harm" would give rise to such an actual and well-

founded fear and an injury in fact, mere "[a]llegations of a subjective 'chill'" do not.  Laird v.

Tatum, 408 U.S. 1, 13-14 (1972) (emphasis added).  Accord, Brooklyn Legal Servs. Corp. B v.

Legal Servs. Corp., 462 F.3d 219, 226 (2d Cir. 2006); Bordell v. Gen. Elec. Co., 922 F.2d 1057,

1060-61 (2d Cir. 1991).

      Offering only the bald assertion that the enforcement of the Election Law prevents

Plaintiffs from speaking on salient issues, the Complaint lacks the requisite specificity, and fails

to establish an injury in fact.  Complaint ¶¶ 20, 26.

      Several Circuit Court decisions in the context of First Amendment challenges are

on point.  Dermer v. Miami-Dade County ("Dermer"), 599 F.3d 1217 (11th Cir. 2010),

concerned a challenge to the constitutionality of a municipal ordinance that prohibited any

person from "intentionally [making] or [causing] to be made any false statement concerning the

contents or effect of any petition for initiative, referendum, or recall . . . ."  Id. at 1220.  The

plaintiff, a registered voter of Miami-Dade County and a former mayor of Miami Beach,

"claim[ed] that he was actively engaged in local politics, specifically past referendums [sic] and

initiatives, but [was] now fearful to participate because of the Ordinance."  Id.  This fear, the

plaintiff alleged, had "a chilling effect on his willingness to participate in any current referendum

or to become involved in any initiating of a referendum on any of the important matters of public

interest about which he care[d] deeply."  Id. (internal brackets omitted).

   Reversing the District Court, the Circuit Court dismissed the plaintiff's complaint

for lack of standing.  The Circuit Court reasoned:

> [The plaintiff] failed to provide the court with anything more than
> generalizations.  He refrained from submitting any detail, such as
> when, where, or how he intends to exercise his right of free speech
> in the future, that illuminates the specifics of his claimed injury.
> Without such elaboration, his mere assertion of a chill is
> insufficient to demonstrate an injury in fact.

Id. at 1220-21 (emphasis added).

   In Sutliffe v. Epping School District ("Sutliffe"), 584 F.3d 314 (1st Cir. 2009),

three individuals challenged the defendant school district's alleged policy to prohibit publication

of their views in the district's newsletter and mailings and on the district's website.  Those

individuals claimed that they "wish[ed] to participate in the taxpayer financed fora for the

expression of views that the School . . . [had] opened."  Id. at 326.  The court determined,

however, that this "nebulous" assertion, without further elaboration as to how or when they

sought to speak, would not support standing.  Id.

   Similarly, in Elend v. Basham ("Elend"), 471 F.3d 1199 (11th Cir. 2006), the

court dismissed a complaint that contested a purported Secret Service policy to restrict certain

"'demonstrators' or selected political speakers (specifically selected on the basis of the content

- 6 -

of their message) . . . to 'Protest Zones'" during public appearances by the President of the

United States.  Id. at 1206.  The plaintiffs had alleged their "intention . . . to protest in concert

with presidential appearances at the USF Sun Dome [located in Tampa, Florida] and at other

locations around the country."  Id. at 1208 (internal quotations omitted).  This "inchoate" injury

did not justify standing, however.  Id.  The court explained:

> Given the entirely speculative inquiry of whether Plaintiffs will
> protest again and – even assuming that such a protest will take
> place – the unspecified details of where, at what type of event, with
> what number of people, and posing what kind of security risk, we
> are being asked to perform the judicial equivalent of shooting
> blanks in the night.  Consistent with our obligation to adjudicate
> only a live case or controversy, we refuse to pull the trigger. . . .
> The entirely speculative nature of the "future protests" would
> render wholly advisory any prospective relief.

Id. at 1206-08.

As Dermer, Sutliffe, and Elend exemplify, therefore, a plaintiff who cannot offer

details as to his or her plans to speak lacks standing to challenge the constitutionality of a law or

policy that would allegedly curtail those plans.

Such is the case here.  From the outset, the Complaint substitutes generality for

the definiteness that standing requires.  Plaintiffs claim that they want to "contribute to the

political debate in New York" (Complaint ¶ 2), "meaningfully participate in the upcoming

general election" (id.), "engage in robust political discourse" (id. ¶ 3), and speak on "salient

issues" (id. ¶ 6).  HLF alternately wishes to make "occasional independent expenditures" (id. ¶

18) and "an isolated expenditure" (id. ¶ 69), but has not demonstrated any financial ability to do

so.  FNY recounts a desire to receive more than $150,000 from certain individuals (see id. ¶ 23)

without identifying them or demonstrating any ability to meet its fundraising goal.

Even FNY's registration as a political committee was an exercise in generality.
When asked to list those candidates FNY planned to aid but who have not authorized such
assistance, FNY Treasurer Jake Menges wrote, "to be determined" and "undeclared."  Exhibits B
and C to the Affidavit of Elizabeth C. Hogan, Esq., sworn to on September 10, 2012.  Under
"Ballot Issues," he wrote, "n/a," which likely stands for "not applicable."  Id.

The first element of standing requires Plaintiffs to have alleged a sufficient injury
in fact.  They have not done so, because the Complaint fails to articulate the content or the
circumstances of the speech that Plaintiffs wish to pursue.  Plaintiffs lack standing, therefore, and
this action is not properly before the Court.

## POINT II.

### PLAINTIFFS' CLAIMS ARE NOT RIPE FOR ADJUDICATION, BECAUSE NO REAL, SUBSTANTIVE CONTROVERSY EXISTS BETWEEN THE PARTIES

Not only do Plaintiffs lack standing, but also their claims are unripe.  The ripeness
requirement is intended to "prevent the courts, through avoidance of premature adjudication,
from entangling themselves in abstract disagreements over administrative policies, and also to
protect . . . agencies from judicial interference until an administrative decision has been
formalized and its effects felt in a concrete way by the challenging parties."  Abbott Labs. v.
Gardner, 387 U.S. 136, 148-49 (1967), overruled on other grounds, Califano v. Sanders, 430
U.S. 99 (1977) .  Plaintiffs' indeterminate Complaint would require this Court to engage in the
kind of abstract guesswork that it is obliged to avoid.

Like standing to sue, "[r]ipeness is a constitutional prerequisite to exercise of
jurisdiction by federal courts."  Nutritional Health Alliance v. Shalala, 144 F.3d 220, 225 (2d
Cir. 1998).  To be ripe, a cause of action must present "a real, substantial controversy, not a mere

hypothetical question."[2]  AMSAT Cable Ltd. v. Cablevision of Conn., 6 F.3d 867, 872 (2d Cir.

1993).  "Thus, when resolution of an issue turns on whether 'there are nebulous future events so

contingent in nature that there is no certainty they will ever occur,' the case is not ripe for

adjudication."  Thomas v. City of New York, 143 F.3d 31, 34 (2d Cir. 1998) (quoting, in part, In

re Drexel Burnham Lambert Group Inc., 995 F.2d 1138, 1146 (2d Cir. 1993)).

      "[D]etermining whether a dispute is ripe for review requires a two-pronged

analysis of (1) whether the issues presented to the district court are fit for review, and (2) what

hardship the parties will suffer in the absence of review."  Connecticut v. Duncan, 612 F.3d 107,

113 (2d Cir. 2010) (emphasis added) (citing Abbott Labs. v. Gardner, 387 U.S. at 148-49).

Accord, Nutritional Health Alliance v. Shalala, 144 F.3d at 225 (applying this bipartite test to

evaluate the ripeness of a declaratory judgment action).  Because Plaintiffs' claims fail to satisfy

the criteria of fitness and hardship, they are not ripe.

## A.     Plaintiff's Claims Are Not Fit for Adjudication

      "To determine fitness for judicial review," this Court "must examine, among

other factors, whether 'consideration of the underlying legal issues would necessarily be

facilitated if they were raised in the context of a specific attempt to [apply and/or] enforce'" New

York's Election Law.  Nutritional Health Alliance v. Shalala, 144 F.3d at 225 (quoting, in part,

Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 171 (1967)).  Fitness requires a "concrete factual

situation" that the Court may evaluate "to delineate the boundaries of what conduct the

government may or may not regulate . . . ."  San Diego County Gun Rights Cmte. v. Reno, 98

F.3d 1121, 1132 (9th Cir. 1996).  This is so, because it would be "impossible and premature" to

---

[2] Indeed, "ripeness overlaps in some respects with standing, most notably in the shared
requirement that the [plaintiff's] injury be imminent rather than conjectural or hypothetical."
Bronx Household of Faith v. Bd. of Educ. of City of N.Y., 492 F.3d 89, 111 (2d Cir. 2007).

determine the constitutionality of government action that may (or may not) take place under nebulous, poorly-defined circumstances that may (or may not) materialize in the future.  Id.

Several Circuit Court cases illustrate First Amendment challenges that lack the requisite fitness because they do not arise from a concrete factual context.  In Marchi v. Board of Cooperative Educational Services of Albany, Schoharie, Schenectady, & Saratoga Counties ("Marchi"), 173 F.3d 469 (2d Cir. 1999), the court dismissed the plaintiff's unripe First Amendment Establishment Clause challenge to a policy directive, because the defendant had not threatened to apply the directive to the plaintiff.  Guessing how the defendant might apply the directive to the plaintiff and evaluating the validity of every possible application, the Court reasoned, would consist of "highly fact-specific and, as of yet, hypothetical" inquiries insufficient to accord standing.  Id. at 478.

The Eleventh Circuit held similarly in Harrell v. The Florida Bar ("Harrell"), 608 F.3d 1241 (11th Cir. 2010).  There, the plaintiff sued, in part, to invalidate several rules that he alleged to constrain his contemplated attorney advertising in violation of the First Amendment. Id. at 1247.  Although the Bar's Ethics and Advertising Department offered plaintiff an expedient means of testing the reach of the challenged rules, plaintiff failed to present that Department with even "a bare script of his proposed advertisements."  Id. at 1264.  The court therefore dismissed all but one of the plaintiff's First Amendment claims as unripe, due to the "substantial measure of uncertainty" as to "how the Bar [would] apply the rules to the proposed advertisements."  Id. at 1263–64.

Adjudication of the claims in Plaintiffs' Complaint would require a similar hypothetical, unripe inquiry, because Plaintiffs have given no particulars about their future conduct.  HLF claims that it seeks "to participate meaningfully in General [sic] Election"

(Complaint ¶ 21) by supporting groups like FNY (id. ¶ 17) and by making expenditures that HLF predicts will be occasional and independent (id. ¶ 18).  For its part, FNY purports a desire to solicit and accept contributions of more than $150,000 from hypothetical individual contributors. Id. ¶ 22.  FNY also wishes to express its views through expenditures that it assures the Court will be independent of any candidate's campaign.  Id.  These allegations, without more, do not establish the fitness of Plaintiffs' claims for adjudication.

    National Organization for Marriage, Inc. v. Walsh ("NOM"), 2010 WL 4174664 (W.D.N.Y. 2010), is analogous.  NOM challenged the constitutionality of the definition of a political committee in Election Law § 14-100(1).  Id. at *1.  NOM's amended complaint described the message it wished to convey and even included transcripts of intended advertisements and a proposed postcard mailing it desired to send voters.  Id.  Like HLF, NOM claimed a fear that it would be classified as a "political committee" under the Election Law. Compare Complaint ¶¶ 18-20 with NOM, 2010 WL 4174664, at *2.  "Because [the] plaintiff would not have needed to make any statutory disclosures until its status under [Election Law] Section 14-100(1) were determined by the state court system," and because the plaintiff had "at least a notable chance of avoiding the disclosure requirements with which it [did] not wish to comply," the court ruled that its fears were "too remote," and hence that its constitutional challenge was unripe.  Id. at *4.

    Such is the case here.  Lacking any discussion of Plaintiffs' intended speech in New York, the Complaint contains even fewer details than the complaint dismissed in NOM.

    Plaintiffs could have specified their planned speech, as HLF has to the United States District Court for the Eastern District of Virginia in The Hispanic Leadership Fund, Inc. v. Federal Election Commission.  See Manning Ex. E.  In that case, HLF asked the Court for an

order requiring the Federal Election Commission to render a conclusive opinion on whether five

advertisements that HLF wishes to run in Virginia, among other states, constitute electioneering

communications.  Id. p. 7.  Rather than merely asserting its desire to "contribute to the political

debate" (Complaint ¶ 2) or to speak on "salient issues" (id. ¶ 6), HLF submitted as an exhibit a

video recording of each advertisement it wished to run.  See id. pp. 7-8.

By contrast, Plaintiffs' Complaint in this action presents hypothetical questions

that invite the Court to indulge in supposition and abstraction.  This should be the stuff of law

review articles, not federal district court opinions.  Absent any allegations concerning Plaintiffs'

future conduct or the Board's likely response thereto, the Court "would be forced to guess at how

[the Board] might apply" the Election Law "and to pronounce on the validity of [its] numerous

possible applications . . ., all highly fact-specific and, as of yet, hypothetical."  Marchi, 173 F.3d

at 478.  As such, Plaintiffs' claims – like those of the plaintiffs in Marchi, Harrell, and NOM –

are unfit and unripe for adjudication.

**B.**      **The Record Fails to Establish Any Hardship That
        Plaintiffs Would Suffer in the Absence of Review.**

Not only are Plaintiffs' claims unfit for review, but also they will suffer no

hardship from this action's dismissal.

In Marchi, the Second Circuit Court of Appeals articulated its standard for

evaluating hardship in a ripeness analysis:

> In assessing the possible hardship to the parties resulting from
> withholding judicial resolution, we ask whether the challenged
> action creates a direct and immediate dilemma for the parties.  A
> plaintiff must show either prosecution pursuant to the challenged
> provision or that a sufficiently real and immediate threat of
> prosecution exists. . . . [S]ome credible fear of enforcement must
> exist.

Marchi, 173 F.3d at 478–79 (emphasis added) (internal citations omitted).  Pursuant to this

standard, the court declined to grant leave to the plaintiff to amend his complaint to allege an

abridgment of his freedom of speech, because the defendant "[had] never indicated that it

intend[ed] to apply the [challenged] directive" in the manner that the plaintiff had anticipated.

Id. at 479.  Accord, Action Apt. Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020,

1027-28 (9th Cir. 2007) (dismissing a challenge to a provision that the defendant had yet to

enforce against the plaintiff); San Diego County Gun Rights Cmte. v. Reno, 98 F.3d at 1132–33

(same).

       A plaintiff asserting a First Amendment violation cannot allege any hardship

when it cannot describe the speech in which it wishes to engage.  Elend v. Basham, supra, is on

point.  In that case, the plaintiffs sought to challenge Secret Service policies that might restrict

their ability to demonstrate at future – but yet unknown and unscheduled – public appearances by

the President of the United States.  Because evaluation of the plaintiffs' First Amendment claims

"depend[ed] so critically on the location and circumstances of the protest zone," the court

declined to adjudicate them:

> In this case, . . . it would strain credulity to say that there is a
> credible threat that Plaintiffs' First Amendment rights will be
> violated in the future.  Again, we don't know when they will
> protest, we don't know where they will protest, and we don't know
> how they will protest.

Elend v. Basham, 471 F.3d at 1211.  Hence, the court affirmed the dismissal of the plaintiffs'

action as unripe.

       This Court should do likewise.  Although Plaintiffs assert a violation of their First

Amendment rights "to speech and association" (Complaint ¶ 1), the record fails to specify the

nature of the speech and association they seek to pursue.  As in Elend, the Court does not know

where, when, or how the Plaintiffs will speak.  The record is similarly devoid of the "real and

immediate threat of prosecution" the Second Circuit requires for a party to establish hardship,

because neither Plaintiff has demonstrated any ability to do what it wishes to do.  Marchi, 173

F.3d at 478–79 (emphasis added) (internal citations omitted).  FNY has offered no evidence that

it has raised or can raise any money to fund its contemplated express advocacy in New York, let

alone $150,000 from one individual.  HLF has not yet made any expenditures, moreover, that

might classify it as a political committee in New York.

        The Complaint refers to Plaintiffs' immediate need to spend or contribute

(Complaint ¶¶ 21, 27), but Plaintiffs have not acted on this claimed urgency by going as far as

the law permits (i.e., soliciting or donating contributions up to the limits established by Election

Law §§ 14-114(8) and 14-116(2)) before challenging the statutory barriers that prevent them

from soliciting or donating more.  FNY may prove unable to raise more than $150,000 from a

single contributor, or may decide to coordinate its future advocacy with selected candidates.

Under such circumstances, HLF may choose to donate its limited to funds to candidates in other

states.  Simply put, this Court could not write an opinion that embraces every factual scenario

that might later materialize, nor does Article III of the United States Constitution permit it to do

so.  Nutritional Health Alliance v. Shalala, 144 F.3d at 225.

        Plaintiffs' claims are not fit for adjudication, and Plaintiffs have failed to allege

hardship in the form of any immediate threat of sanctions by the Board of Elections or its

Commissioners.  As such, this action is unripe, and the Court should dismiss the Complaint.

## POINT III.

## IN ALTERNATIVE TO THIS ACTION'S DISMISSAL, THE COURT SHOULD GRANT DEFENDANTS LEAVE TO ENGAGE IN EXPEDITED DISCOVERY

Should the Court deny Defendants' motion to dismiss the Complaint, Defendants seek the Court's permission to pursue expedited discovery to ascertain, inter alia:

- whether FNY in fact intends to engage solely in independent expenditures,

- the synergy between FNY's express advocacy and the coordination of its treasurer, professional political consultant Jake Menges, with his clients, who include candidates for public office (Manning Aff. ¶¶ 20-23);

- whether HLF's "major purpose" is to engage in express advocacy for or against candidates for public office, rather than in issue advocacy; and

- specific details concerning HLF's and FNY's planned express advocacy in New York State and local elections in 2012 and their plans to raise sufficient funds to engage in such advocacy.

A copy of the discovery requests that Defendants plan to serve upon HLF and FNY are attached as Exhibit N to the accompanying Affidavit of Kenneth A. Manning, Esq.

Although FRCP 26(d)(1) provides that parties generally may not seek discovery prior to the conference required by FRCP 26(f), the Court may allow such expedited discovery upon evaluating factors that include:  (i) the burden and prejudice to the parties that would need to respond to discovery, (ii) the strength of the dispositive motion upon which the request is based, and (iii) the prejudice that the moving party would sustain if expedited discovery were not permitted.  OMG Fid., Inc. v. Sirius Tech., Inc., 239 F.R.D. 300, 304-05 (N.D.N.Y. 2006)

(granting motion for expedited discovery).  In this action, all three factors support expedited

discovery, absent outright dismissal of the Complaint.

First, Defendants' proposed discovery requests would impose minimal burden

upon HLF and FNY.  They are few and limited in scope to determine whether Plaintiffs have

standing, whether their claims are ripe, and whether Plaintiffs are likely to succeed on the merits

of their pending motion for a preliminary injunction prohibiting enforcement of New York's

limits on contributions to political committees as applied to HLF and FNY and political

committees' administrative requirements as applied to HLF.  Given the scarcity of material facts

in the Complaint, expedited discovery would facilitate adjudication of the motion to dismiss and

the preliminary injunction motion on a complete record.

Second, Defendants' motion to dismiss has significant merit, whereas Plaintiffs

are unlikely to succeed on the merits of their claims to justify a preliminary injunction in their

favor.  As discussed in the accompanying affidavit of Kenneth A. Manning, Esq., Defendants

have researched and compiled publicly available information to suggest – contrary to allegations

in the Complaint – that FNY in fact is not an independent expenditure-only political committee

(as evidenced by treasurer Jake Menges' professional political consulting and coordination with

candidates for public office), and that HLF's major purpose is to engage in express advocacy.

Under these circumstances, Plaintiffs would lack standing to pursue their constitutional claims.

Defendants anticipate that discovery will further substantiate this to be so.

Third, absent this action's dismissal, denial of expedited discovery would severely

prejudice Defendants.  FNY wants Defendants to trust, only on the word of its political

consultant-treasurer, that it will engage only in independent expenditures, notwithstanding

evidence to the contrary.  HLF likewise wants Defendants to assume that its major purpose is to engage in issue advocacy, even though the Complaint fails to disclose contributions that HLF's political committee has made to three Congressmen's campaigns.  Complaint ¶ 17.  In preparing their opposition to the pending motion for a preliminary injunction, Defendants require expedited discovery to evaluate the truth of Plaintiffs' conclusory, unsubstantiated allegations in the Complaint about their intended fundraising, contributions, and express advocacy in New York.

In alternative to dismissing the Complaint or denying Plaintiffs' preliminary injunction motion outright, therefore, the Court should allow Defendants to engage in expedited discovery, as set forth in Exhibit N to the accompanying affidavit of Kenneth A. Manning, Esq.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants Walsh, Kellner, Aquila, and Peterson respectfully request that this Court grant their motion to dismiss the Complaint in this action, and such other and further relief as this Court deems just and proper.  In the alternative, those Defendants respectfully request the Court's leave to engage in expedited discovery.

Dated: Buffalo, New York
         September 9, 2012

Respectfully submitted,

PHILLIPS LYTLE LLP

/s/ KENNETH A. MANNING_____
Kenneth A. Manning (Bar ID # 513311)
3400 HSBC Center
Buffalo, New York  14203
Telephone No.:  (716) 847-8400
E-mail:  cbucki@phillipslytle.com

*Attorneys for Defendants Kellner and Aquila*

Dated: Albany, New York
          September 9, 2012

Respectfully submitted,

BROWN & WEINRAUB, PLLC

/s/ JUSTIN E. DRISCOLL_____
Justin E. Driscoll (Bar ID # 510293)
79 Columbia Street
Albany, New York   12210
Telephone No.:  (518) 427-7350
E-mail:  jdriscoll@brownweinraub.com

*Attorneys for Defendants
Walsh and Peterson*

Doc # 01-2602533.4