**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**THE HISPANIC LEADERSHIP FUND, INC., and**
 **FREEDOM NEW YORK,**

                          **Plaintiffs,**

          **vs.**                                    **1:12-cv-1337**
                                                     **(MAD/TWD)**

**JAMES A. WALSH, Co-chair of New York State**
**Board of Elections; DOUGLAS A. KELLNER,**
**Co-chair New York State Board of Elections;**
**EVELYN J. AQUILA, Commissioner of New York**
**State Board of Elections; GREGORY P.**
**PETERSON, Commissioner of New York State**
**Board of Elections,**

                          **Defendants,**
          **and**

**NEW YORK STATE,**

                          **Intervenor-Defendant.**
_____

**APPEARANCES:**                     **OF COUNSEL:**

**BRACEWELL & GIULIANI LAW, LLP**      **ANDREW RAFALAF , ESQ.**
1251 Avenue of the Americas          **LAURENCE LEVY, ESQ.**
49th Floor
New York, New York 10020
Attorneys for Plaintiffs

**HOLTZMAN, VOGEL & JOSEFIAK, PLLC**   **JASON B. TORCHINSKY, ESQ.**
45 North Hill Drive – Suite 100
Warrenton, Virginia 20186
Attorneys for Plaintiffs

**BROWN & WEINRAUB, PLLC**            **JUSTIN E. DRISCOLL, ESQ.**
233 Broadway – Suite 2070
New York, New York 10279
Attorneys for Defendants Walsh and
Peterson

**PHILLIPS LYTLE, LLP**
3400 HSBC Center
Buffalo, New York 14203-2887
Attorneys for Defendants Kellner and
Aquila

**KENNETH A. MANNING, ESQ.**
**CRAIG R. BUCKI, ESQ.**

**OFFICE OF THE NEW YORK**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Intervenor-Defendant
New York State

**KELLY L. MUNKWITZ, AAG**

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On August 28, 2012, Plaintiffs filed this action asking the Court to find several

provisions of the New York State Election Law unconstitutional facially and as applied. *See*

Dkt. No. 1. On the same day, Plaintiffs filed an emergency motion for a preliminary and

permanent injunction. *See* Dkt. No. 4. On October 23, 2012, the Court denied Plaintiffs' motion

for a preliminary injunction. *See* Dkt. No. 32.

Currently before the Court is Defendants' motion to dismiss for lack of subject matter

jurisdiction. *See* Dkt. Nos. 18-19.

### II. BACKGROUND

**A.      Statutory and regulatory background**

To protect against corruption and the appearance of corruption, New York Election Law

limits contributions that an individual or corporation may make to candidates and political

parties. *Schwartz v. Romnes*, 495 F.2d 844, 849 (2d Cir. 1974). Moreover, to ensure that voters

have sufficient information to intelligently participate in elections, to deter corruption, and to

enable the New York State Board of Elections ("Board of Elections") to enforce contribution limits, New York law requires certain organizations that seek to promote the election or defeat of a candidate or ballot issue to register and disclose ceratin information about themselves and those who contribute to them.

### *1. Contributions and independent expenditures*

New York sets limits on the amounts that a corporation or individual may contribute to candidates, parties, and political committees. A corporation doing business in New York may make contributions up to $5,000 in any year for purposes related to elections for New York state, local office, or party positions. *See* N.Y. Elec. Law § 14-116(2). An individual may make contributions, loans, or guarantees of funds of up to $150,000 in a year "in connection with the nomination or election of persons to state and local public offices and party positions within the state of New York in any one calendar year." *Id.* at § 14-114. In an opinion issued by the New York State Board of Elections, this $150,000 limit applies to "contributions to independent committees[.]" *See* Dkt. No. 4-7 at 3.

The Election Law defines a "contribution" as follows:

> (1) any gift, subscription, outstanding loan (to the extent provided for in section 14-114 of this chapter), advance, or deposit of money or any thing of value, made in connection with the nomination for election, or election, of any candidate, or made to promote the success or defeat of a political party or principle, or of any ballot proposal,
>
> (2) any funds received by a political committee from another political committee to the extent such funds do not constitute a transfer,
>
> (3) any payment, by any person other than a candidate or a political committee authorized by the candidate, made in connection with the nomination for election or election of any

> candidate, or any payment made to promote the success or defeat
> of a political party or principle, or of any ballot proposal including
> but not limited to compensation for the personal services of any
> individual which are rendered in connection with a candidate's
> election or nomination without charge; provided however, that
> none of the foregoing shall be deemed a contribution if it is made,
> taken or performed by a candidate or his spouse or by a person or a
> political committee independent of the candidate or his agents or
> authorized political committees.

N.Y. Elec. Law § 14-100(9).  Therefore, a payment of money to promote the success or defeat of

a candidate is not a "contribution" if the payment is "made, taken or performed . . . by a person

or a political committee independent of the candidate or his agents or authorized political

committees." *Id.*


### 2. Political committee registration and reporting requirements

In New York, a "political committee" is defined as "any corporation aiding or promoting

and any committee, political club or combination of one or more persons operating or

co-operating to aid or to promote the success or defeat of a political party or principle, or of any

ballot proposal; or to aid or take part in the election or defeat of a candidate for public office or

to aid or take part in the election or defeat of a candidate for nomination at a primary election or

convention, including all proceedings prior to such primary election, or of a candidate for any

party position voted for at a primary election, or to aid or defeat the nomination by petition of an

independent candidate for public office[.]" *Id.* § 14-100(1).  The term does not apply, however,

to "any committee or organization for the discussion or advancement of political questions or

principles without connection with any vote or to a national committee organized for the election

of presidential or vice-presidential candidates[.]" *Id.*

Under New York law, a "political committee" must designate a treasurer and a

depository, and the treasurer must keep" detailed, bound accounts of all receipts, transfers, loans, liabilities, contributions and expenditures, made by the committee or any of its officers, members or agents acting under its authority or in its behalf." *Id.* § 14-118(1). Moreover, the political committee must register by filing a statement which provides, among other things, the name and address of the treasurer, the name of its depository institution (bank), and "the candidate or candidates or ballot proposal or proposals the success or defeat of which the committee is to aid or take part[.]" *Id.* Further, a political committee must file statements listing the names and addresses of contributors who donate ninety-nine (99) dollars or more to the committee and the amounts of such contributions. *See id.* § 14-102(1). A political committee is not required to register and file reports, however, if its aggregate expenditures do not exceed fifty (50) dollars during any calendar year. *See* 9 N.Y.C.R.R. § 6200.5.

### 3. Political Action Committees

Political Action Committees ("PACs") are designated by the Board of Elections as "committee type 2, and cannot make expenditures to aid or take part in the nomination, election or defeat of a candidate, other than in the form of contributions." *See* Dkt. No. 18-27 at ¶ 27 (citing Election Law §§ 14-112, 14-118(1)). According to Defendants, "[t]he reason why committees that only make contributions (PACs) are not required to list candidates being supported or opposed, is that there is no requirement that they comply with candidate limits, as PACs are not authorized committees." *See id.* at ¶ 28 (citing Election Law §§ 14-112, 14-114). Moreover, Defendants claim that PACS do not have to list candidates to be supported or opposed, or to disclose whether they are authorized by candidates or not, because contributions made by PACs are subject to the applicable limit of the recipient candidate or that candidate's

authorized committee, and must be disclosed both on the PAC's campaign finance report, as well as the corresponding recipient candidate/committee's report. *See id.* at ¶ 29.

Defendants assert that disclosure by the PAC making the contribution, as well as disclosure by the candidate receiving it, provide the Board of Elections with the information necessary to ascertain whether applicable limits have been exceeded. *See id.* (citing Election Law §§ 14-100(9), 14-102, 14-104, 14-112 & 14-114). Moreover, other types of political committees must disclose the candidates to be supported or opposed and whether they are authorized or not, as this allows the Board of Elections to determine whether contribution limits apply. *See id.* at ¶ 30. Defendants further contend that "PACs are different from corporations or unions which engage in express advocacy, as PACs are created for a specific purpose – only to make contributions. Express advocacy by corporations or unions, and information as to whether or not such activity was coordinated, authorized or unauthorized by the candidates to be supported or opposed, determine whether the group is a different type of political committee which would be subject to the Election Law and its limits." *See id.* at ¶ 32.

### *4. Authorized/Unauthorized Committees*

An "authorized committee" is the term derived from the Election Law relating to those political committees which are specifically authorized by a candidate to "aid or take part in his election." N.Y. Elec. Law §§ 14-112, 14-100(9)(3) & 14-104(1)-(2). According to Defendants, "[a]n unauthorized committee is the term derived from the Election Law relating to, as the name implies, committees not authorized by a candidate to 'aid or take part in his election.' This committee is designated as a type 9 by the Board." *See* Dkt. No. 18-27 at ¶ 34.

Pursuant to the Election Law, "[a]ny political committee aiding or taking part in the

election or nomination of any candidate, other than by making contributions, shall file, in the office in which the statements of such committee are to be filed pursuant to this article, either a sworn verified statement by the treasurer of such committee that the candidate has authorized the political committee to aid or take part in his election or that the candidate has not authorized the committee to aid or take part in his election."  N.Y. Elec. Law § 14-112.  This authorization statement, which is a single page, is referred to as a CF-03 "Committee Authorization Status" form.  *See* Dkt. No. 18-27 at ¶ 35.  This provision and the CF-03 form is intended to allow the Board of Elections and the public, including other candidates, to ascertain whether or not a contribution limit applies to that particular committee.  *See id.* at ¶ 37.

On or about August 17, 2012, Plaintiff FNY filed its CF-03 with the Board of Elections. *See id.* at ¶ 36; *see also* Dkt. No. 18-30.  When asked to list the candidate(s) "for whom your committee is aiding or taking part in their election or nomination (other than by making contributions) but who **have not authorized** your committee to do so," Plaintiff FNY answered "to be determined."  *See id.*; *see also* Dkt. No. 18-30 (emphasis in original).  Defendants claim that, according to the Election Law, "an unauthorized committee may make unlimited independent expenditures on behalf of candidates, and is not subject to candidate limits as applied to those expenditures."  *See id.* at ¶ 38.

**B.      Plaintiffs' amended complaint**

Plaintiff Hispanic Leadership Fund, Inc. ("HLF") is a tax-exempt organization primarily focused on issue advocacy.  It is a non-partisan 501(c)(4) social welfare organization incorporated in Virginia.  *See* Dkt. No. 44 at ¶ 6.  Plaintiff HLF accomplishes its advocacy mission through the use of television, radio, and print advertisements.  *See id.* at ¶ 13.  HLF also

makes contributions to "like-minded organizations[,]" and will occasionally engage in political speech "expressly advocating for the election or defeat of a candidate, but HLF's major purpose is issue advocacy." *See id.* at ¶¶ 14-15. HLF wishes to spend more than $5,000 on independent expenditures in New York this year, and wishes to make contributions in excess of $5,000 to New York political committees for the purpose of expressing its views through independent expenditures. *See id.* at ¶¶ 16-17. HLF claims that it has never and does not plan on making any contribution to any candidate for any office. *See id.* at ¶ 17.

Plaintiff Freedom New York ("FNY") "is an independent expenditure-only, Type 9, unauthorized committee registered with the New York State Board of Elections that promotes conservative approaches and principles to salient New York issues." *See id.* at ¶ 7.[1] Plaintiff FNY is seeking to solicit and accept corporate contributions in excess of $5,000 this year and contributions in excess of $150,000 from individual contributors – as well as donations from individual contributors who would exceed the $150,000 aggregate annual limit if they were to contribute to FNY – for the purpose of furthering "its mission to promote conservative approaches and principles" through independent expenditures. *See id.* at ¶¶ 20-21.

The amended complaint alleges that New York's limits on contributions to independent expenditure-only political committees by individuals and corporations are unconstitutional. *See* Dkt. No. 44 at ¶¶ 43, 47, 49.

On or about August 1, 2012, counsel for Plaintiff FNY, Laurence A. Levy, spoke with a representative of the Board of Elections regarding contribution limits to "independent

---

[1] According to the New York State Board of Elections website, Plaintiff FNY registered with the Board of Elections on August 17, 2012. *See* N.Y.S. Board of Elections, http://www.elections.ny.gov/CommitteesRegisteredbyDate.html (last visited September 24, 2013).

expenditure-only committees[.]" *See* Dkt. No. 44 at ¶ 22. The Board of Elections' representative referred Mr. Levy to the Board of Elections' 1994 Opinion #3 (April 25, 1994) "as the controlling authority interpreting the Election Law limitations on donations to such committees as campaign contributions." *See id.* In this opinion, the following question was presented: "Whether a person acting independent of the candidate or his agents or authorized political committees who gives money to an independent committee which is also acting independent of the candidate or his agents or authorized political committees is subject to the contribution limits of § 14-114 of the Election Law?" *See* Dkt. No. 4-7 at 2. The opinion concluded that "the intent of enacting this language was to allow for the unlimited expenditures or contributions by candidates to his or her own political campaign and the unlimited independent expenditures by persons or political committees." *See id.* The opinion further concludes that, "while direct expenditures and contributions to his or her own candidate committee by a candidate and his or her spouse is unlimited, and direct expenditures by persons acting independently of the candidate and his or her committee are unlimited, contributions to independent committees are limited by the limits imposed under § 14-114 of the Election Law." *See id.* at 3. Mr. Levy was also informed that independent expenditures require registration as a Type 9, unauthorized committee. *See* Dkt. No. 4 at ¶ 6.

On or about August 20, 2012, Mr. Levy spoke with William McCann, Special Deputy Counsel for the Board of Elections. *See id.* at ¶ 7. Mr. McCann reiterated that the 1994 Opinion continues to be the official position of the Board of Elections regarding limitations on contributions to independent expenditure groups. *See id.* In light of his communications with the Board of Elections, Mr. Levy counseled Plaintiff FNY that it was currently prohibited from soliciting and accepting contributions for the purpose of expressing its views through

independent expenditures in excess of New York's statutory limits. *See id.* at ¶ 8.

In their amended complaint, Plaintiffs claim that they wish to meaningfully participate in upcoming elections in New York. Plaintiff HLF wishes to spend more than $5,000 on independent expenditures in New York this year and to make contributions to like-minded organizations. *See* Dkt. No. 44 at ¶¶ 14, 16. Plaintiff HLF alleges that it "has never and does not plan on making any contribution to any candidate for any office. It does, however, wish to make contributions in excess of $5,000 to New York political committees, such as FNY, for the purpose of supporting FNY's independent expenditures." *See id.* at ¶ 17. Moreover, in order to avoid civil and criminal penalties, Plaintiff HLF alleges that it has refrained from making contributions to New York political committees in excess of $5,000. *See id.* at ¶¶ 18-19.

Plaintiff FNY claims that it wishes to solicit and accept corporate contributions in excess of $5,000, and $150,000 from individual contributors (as well as donations from contributors who would exceed the $150,000 aggregate annual limit), for the purpose of expressing its views through independent expenditures. *See id.* at ¶¶ 20-21. Plaintiff FNY claims that, "[d]ue to the restrictions imposed by the Election Law, [it] has refrained from soliciting and accepting contributions for the purpose of expressing its views through independent expenditures in excess of New York statutory limits so as to avoid criminal and civil penalties imposed for violations of Election Law." *See id.* at ¶ 24.

On January 10, 2012, Defendants filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See* Dkt. No. 18. In their motion, Defendants argue that Plaintiffs lack standing to assert their claims because they

fail to satisfy the "case or controversy" requirement of Article III.  *See* Dkt. No. 18-33 at 8-11.[2]

Moreover, Defendants claim that Plaintiffs' claims are not ripe because they are not fit for

adjudication and the record fails to establish any hardship that Plaintiffs would suffer in the

absence of review.  *See id.* at 12-18.


## III. DISCUSSION

### A.      Standard of review

On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure,

the non-conclusory factual allegations in the complaint, unless contradicted by evidence, are

taken as true and all reasonable inferences drawn from those factual allegations are construed in

favor of the plaintiff.  *See Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir.

2011) (citation omitted).  "On a Rule 12(b)(1) motion challenging the district court's subject

matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to

evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary

hearing." *Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d

Cir. 2000) (citation omitted).  Both the movant and the pleader are permitted to use affidavits or

other competent evidence to support and oppose the motion to dismiss for lack of subject matter

jurisdiction.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation

omitted).  "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made

by drawing from the pleadings inferences favorable to the party asserting it.'"  *Gunst v. Seaga*,

No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Financial*

---

[2] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

*Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citation omitted).

**B.     Standing**

"It is well settled that '[t]he federal judicial power extends only to actual cases and controversies; federal courts are without jurisdiction to decide abstract or hypothetical questions [of] law.'"  *Ross v. Bank of Am., N.A. (U.S.A.)*, 524 F.3d 217, 222 (2d Cir. 2008) (quoting *E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 46 (2d Cir. 2006)) (other citation omitted); *see also* U.S. Const. art. III, § 2.  Standing is "'the threshold question in every federal case, determining the power of the court to entertain the suit.'"  *Id.* (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)) (other citation omitted).  To establish constitutional standing under Article III, "a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision."  *Denney*, 443 F.3d at 263 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed.2d 351 (1992)).

When presented in satisfaction of the injury-in-fact requirement, any threatened injury must be "concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Coal. of Watershed Towns v. United States Envtl. Prot. Agency*, 552 F.3d 216, 217 (2d Cir.

2008) (citation omitted). Elaborating on the redressability requirement, the Second Circuit has explained that "[r]edressability is the non-speculative likelihood that the injury can be remedied by the requested relief. It must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Id.* at 218 (citation omitted).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 608, 107 L. Ed. 2d 603 (1990)) (other citation omitted). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (citations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quotation omitted). "In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'" *Id.* (quotation omitted).

Defendants allege that Plaintiffs have offered only bald assertions that the enforcement of the Election Law prevents them from speaking on salient issues; and, therefore, the complaint lacks the requisite specificity to establish injury in fact. *See* Dkt. No. 18-33 at 9. Specifically, Defendants claim that, "[f]rom the outset, the Complaint substitutes generality for the

definiteness that standing requires.  Plaintiffs claim that they want to 'contribute to the political debate in New York' (Complaint ¶ 2), 'meaningfully participate in the upcoming general election' (*id.*), 'engage in robust political discourse' (*id.* ¶ 3), and speak on 'salient issues' (*id.* ¶ 6)."  *See* Dkt. No. 18-33 at 11.  Moreover, Defendants claim that "HLF alternatively wishes to make 'occasional independent expenditures' (*id.* ¶ 18) and 'an isolated expenditure" (*id.* ¶ 69), but has not demonstrated any financial ability to do so."  *See id.*  Finally, Defendants argue that "FNY recounts a desire to receive more than $150,000 from certain individuals . . . without identifying them or demonstrating any ability to meet its fundraising goal."  *See id.*

In *Green Party of Connecticut v. Garfield*, the plaintiffs challenged, among other things, "trigger provisions" in Connecticut's election law.  *See Green Party of Conn. v. Garfield*, 616 F.3d 213, 221 (2d Cir. 2010).  These provisions provided that candidates for office would receive additional matching funding when certain conditions were met.  *See id.* at 221-22.  The defendants argued that the plaintiffs lacked standing to challenge these provisions.  *See id.* at 242.  Finding that the plaintiffs had standing to challenge both provisions, the Second Circuit first noted that the plaintiffs submitted "very little evidence" to suggest that any member of the Green or Libertarian Party will ever raise or spend enough of his own money to trigger the excess expenditure provisions.  *See id.*  Further, the court noted that "no plaintiff (or member of one of the plaintiff minor parties) has declared an intention to spend enough personal wealth to trigger the excess expenditure provision, and there is little evidence to suggest that any minor-party candidate in Connecticut could plausibly raise enough money through private contributions to trigger the excess expenditure provision."  *Id.* at 242-43.  Despite this, however, the court found that the record demonstrates that the Green Party often cross-endorses a major-party candidate and that contributions to that candidate combined with the candidate's other

fundraising efforts could trigger the excess expenditure provision. *See id.* at 243. As such, the Second Circuit held that the plaintiffs demonstrated a "sufficiently 'concrete, particularized, and . . . imminent'" injury to establish standing to challenge the provision. *Id.* (quotation omitted). Finally, with respect to the independent expenditure provision at issue, the Second Circuit held that, "[i]f the Green Party chooses to cross-endorse a major-party candidate, any independent expenditures made by the Green Party advocating for the defeat of the candidate's opponent could trigger the independent expenditure provision. We conclude, therefore, that the potential chilling effect on plaintiffs' independent expenditures . . . is sufficient to provide plaintiffs with standing[.]" *Id.*

In *Initiative & Referendum Institute v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006), the Tenth Circuit formulated a test for determining standing in suits based on a chilling effect of speech:

> [P]laintiffs in a suit for prospective relief based on a "chilling effect" on speech can satisfy the requirement that their claim of injury be "concrete and particularized" by (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so because of a credible threat that the statute will be enforced.

*Id.* The court reasoned that in such cases a plaintiff need not demonstrate a "present intention" to engage in speech "at a specific time in the future" because "[a] plaintiff who alleges a chilling effect asserts that the very existence of some statute discourages, or even prevents, the exercise of his First Amendment rights." *Id.* Such plaintiffs establish standing by satisfying the above criteria; "it is not necessary to show that they have specific plans or intentions to engage in the type of speech affected by the challenged government action." *Id.*

In *North Carolina Right to Life Committee Fund for Independent Political Expenditures*

15

*v. Leake*, 524 F.3d 427, 434-35 (4th Cir. 2008), the Fourth Circuit considered whether the plaintiffs had standing to challenge a public campaign financing program's trigger provisions, despite having insufficient funds to make an independent expenditure that would have triggered any matching funds. The court first held that "a plaintiff may establish the injury necessary to challenge campaign finance regulations by alleging an intention to engage in a course of conduct arguably affected with a constitutional interest" and that a plaintiff may make "conditional statements of intent" that he or she "would engage in a course of conduct but for the defendants' allegedly illegal action," thereby establishing the requisite injury in fact. *Id.* at 435 (internal quotations omitted). Accordingly, the Fourth Circuit concluded that the plaintiffs had standing because they had sufficiently alleged "that they would have made contributions and expenditures but for the challenged provisions." *Id.*

In the present matter, Plaintiffs allege that they wish to accept contributions and make independent expenditures in excess of what New York Election Law permits. *See* Dkt. No. 44 at ¶¶ 14-21. Further, the amended complaint alleges that Plaintiffs have refrained from engaging in these activities because, upon speaking to counsel for the New York State Board of Elections, it was determined that they would be in violation of the Election Law. *See id.* at ¶¶ 18-19, 22-24. Plaintiffs' conversation with counsel to the Commissioners has made them refrain from engaging in fund-raising and the expenditures that those fund-raising efforts would enable because they fear criminal prosecution if they are found to be in violation of the Election Law as it is presently interpreted.

Moreover, as Defendants point out, Plaintiff HLF has in the past engaged in speech of the kind at issue here and has made contributions and expenditures in other states, which demonstrates its ability to engage in this conduct in the future. *Walker*, 450 F.3d at 1089

(finding that the court may consider evidence that the plaintiff engaged in the type of speech affected by the challenged government action in the past in determining if the plaintiff has standing). These facts, as set forth in Plaintiffs' amended complaint and papers submitted in opposition to Defendants' motion to dismiss are sufficient to establish standing to pursue these claims. *See id.*

Based on the foregoing, the Court denies Defendants' motion to dismiss on this ground.[3]

## C. Ripeness

"Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing." *National Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). "The 'irreducible constitutional minimum of standing contains three elements': (1) 'the plaintiff must have suffered an injury in fact,' *i.e.*, 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'; (2) 'there must be a causal connection between the injury and the conduct complained of'; and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (quotation marks, citations, alterations, and footnotes omitted)). "Constitutional ripeness, in other words, is really just about the first *Lujan* factor — to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's

---

[3] In the section of their motion to dismiss arguing that Plaintiffs lack standing, Defendants only addressed the "injury in fact" requirement. *See* Dkt. No. 18-33 at 8-12. Although not raised by Defendants, the Court finds that Plaintiffs have satisfied the other two standing requirements, *i.e.*, causation and redressability. Having reviewed the parties' submissions, the Court finds that Plaintiffs have established, for purposes of this motion, that Defendants' conduct have caused them injury that a favorable decision will redress. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004).

claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *Walsh*, 714 F.3d at 688 (quotation and other citations omitted); *see also New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 n.8 (2d Cir. 2008) ("Standing and ripeness are closely related doctrines that overlap most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical" (quotation marks and alterations omitted)); *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 226 (2d Cir. 2008) (finding that because the ripeness and standing doctrines "overlap," claims that were sufficiently "actual and imminent" to establish Article III standing also were ripe for adjudication, "not merely speculative or hypothetical").

"Despite the language of *Lujan* and similar cases, however, we assess pre-enforcement First Amendment claims . . . under somewhat relaxed standing and ripeness rules." *Walsh*, 714 F.3d at 689. "A plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy." *Id.* (citing *Laird v. Tatum*, 408 U.S. 1, 13-14, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972)). "But a real and imminent fear of such chilling is enough." *Id.* "As the Eleventh Circuit has explained, without the possibility of pre-enforcement challenges, plaintiffs contesting statutes or regulations on First Amendment grounds 'face an unattractive set of options if they are barred from bringing a facial challenge': refraining from activity they believe the First Amendment protects, or risk civil or criminal penalties for violating the challenged law.'" *Id.* (quoting *Fla. League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 459 (11th Cir. 1996)).

In the present matter, Defendants argue that Plaintiffs' claims are not fit for adjudication because they have not provided any "particulars about their future conduct." *See* Dkt. No. 18-33 at 14. Defendants assert that Plaintiffs could have specified their planned speech, as they did in

a case brought in the United States District Court for the Eastern District of Virginia, but failed to do so. *See id.* at 15-16. In that case, Plaintiff HLF asked the Court for an order requiring the Federal Election Commission to render a conclusive opinion on whether five advertisements that HLF wished to run in Virginia, among other states, constituted electioneering communications. *See Hispanic Leadership Fund, Inc. v. Fed. Elec. Comm'n*, 897 F. Supp. 2d 407, 414-15 (E.D. Va. 2012). Defendants claim that, "[r]ather than merely asserting its desire to 'contribute to the political debate' (Complaint ¶ 2) or to speak on 'salient issues' (*id.* ¶ 6), HLF submitted as an exhibit a video recording of each advertisement it wished to run." *See* Dkt. No. 18-33 at 16.

Contrary to Defendants' arguments, Plaintiffs' claims are ripe for adjudication. There is a clearly defined relationship between violations of Article 14 of the Election Law and the criminal and civil penalties that may be incurred for such violations: the Board of Elections is required to investigate potential violations of Article 14 and seek appropriate criminal and civil remedies for such violations. Plaintiffs have alleged that they have refrained from participating in last year's and upcoming elections due to these alleged unconstitutional restrictions and mandates imposed under Article 14 and the threat of criminal and civil sanctions imposed for violations of Article 14. As such, Plaintiffs have alleged a concrete and actual injury, with a causal connection between the complained of conduct that will likely be redressed by a favorable decision. *See Walsh*, 714 F.3d at 689-90.

In *Hispanic Leadership Fund, Inc. v. Fed. Elec. Comm'n*, 897 F. Supp. 2d 407 (E.D. Va. 2012), the plaintiff sought a declaratory judgment determining whether certain advertisements they sought to publish would trigger the Federal Election Campaign Act's ("FECA") disclosure requirements. *See id.* at 414. Denying a motion to dismiss on standing and ripeness grounds, the court considered, among other things, the five advertisements that the plaintiff planned to

publish leading up to the election. *See id.* at 415-18. Prior to filing suit, substantially similar advertisements were presented to the FEC for an advisory opinion by another organization. *See id.* at 415. The FEC, however, deadlocked as to whether the advertisements constituted electioneering communications, and they issued a unanimous opinion stating that it could not reach a decision regarding the advertisements. *See id.*

Defendants' reliance on *Hispanic Leadership Fund, Inc.* is misplaced. The issues in the present matter are the contribution and expenditure limits placed on individuals and entities under Article 14. As such, Plaintiffs' failure to provide the Court with exact examples of the speech in which it wishes to engage is not dispositive. *See Walker*, 450 F.3d at 1089 (citation omitted).

In *Virginia Soc'y for Human Life v. Fed. Elec. Comm'n*, 263 F.3d 379 (4th Cir. 2001), *overruled on other grounds, Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544, 550 n.2 (4th Cir. 2012), the Fourth Circuit found that the plaintiff had standing because the plaintiff "alleged an intention to engage in constitutionally protected activities that would fall within the reach of the regulation." *Id.* at 388. Further, the court found that the plaintiff's injury, the fear of prosecution, was imminent and immediate, "because it needed to plan the substance and placement of its advertisements" for the 2000 election, which at the time of suit "was only fifteen months away." *Id.* The court also noted that the plaintiff has alleged that it "'intends to continue to spend money to communicate with the general public as it has in the past,'" and found significant that the plaintiff's past activities both inside and outside the Fourth Circuit were "concretely described, and they further support its credible fear of prosecution." *Id.*

Like the plaintiff in *Virginia Soc'y for Human Life*, Plaintiff HLF's past activities are "concretely described" in the record. For example, in the affidavit of Kenneth A. Manning, the

advertisements at issue in the case pending in the Eastern District of Virginia are described in some detail. *See* Dkt. No. 18-1 at ¶¶ 8-9. Further, Mr. Manning discusses past news releases and other expenditures and activities engaged in by Plaintiff HLF and Plaintiff FNY's treasurer, Jack Menges. *See id.* at ¶¶ 12-24. All of this further supports Plaintiffs' credible fear of prosecution. Moreover, a decision on the merits in this matter is not an abstract interpretation of the law at issue, but a determination of the limits Plaintiffs must abide by as they relate to contributions and independent expenditures. *See Virginia Soc'y for Human Life, Inc.*, 263 F.3d at 390 (citation omitted).

After Defendants' motion was filed, the Second Circuit issued a decision in *National Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682 (2d Cir. 2013) ("*NOM*"), reversing the district court's determination that the claim was not ripe for adjudication. In *NOM*, the plaintiff, a nonprofit advocacy organization, was seeking a declaration that New York Election Law § 14-100(1) – defining "political committee" – is unconstitutional because, on its face, it would impermissibly restrict the political speech of organizations only engaged in independent expenditures.[4] *See id.* at 685-86. The district court dismissed the amended complaint for lack of jurisdiction on the grounds that the claims were not ripe for adjudication because New York State Board of Elections had not yet attempted to enforce the "political committee" definition against the plaintiff. *See id.* The Second Circuit reversed that dismissal, finding that the plaintiff need not demonstrate with certainty that it will be prosecuted under the statute. *See id.* at 689-90. Rather, the court found that the plaintiff had a well-founded fear of prosecution under the statute where the plaintiff alleged that its activities would meet the statutory definition of "political

---

[4] The Court notes that Plaintiffs originally challenged the constitutionality of section 14-100(1) of the Election Law, but have since voluntarily dismissed that claim.

committee." *Id.* In making this determination, the Second Circuit considered, among other things, a proposed advertisement that the plaintiff had attached to the amended complaint.

In the present matter, Plaintiffs allege in the amended complaint that: they wish to engage in express advocacy and independent expenditures; Plaintiff FNY has registered as a Type 9, unauthorized committee (which requires Plaintiff FNY to abide by the reporting requirements and contribution limitations imposed by the Election Law); Plaintiff FNY wishes to accept a corporate contribution from Plaintiff HLF in excess of limits imposed by the Election Law; and Plaintiff HLF wishes to proffer such contributions to Plaintiff FNY in excess of limits imposed by the Election Law. *See* Dkt. No. 44 at ¶¶ 16-24. These allegations, in addition to the facts already discussed, make clear that Plaintiffs have sufficiently established ripeness where Plaintiff FNY, as an admitted political committee that seeks to engage in independent expenditures only, has a well-founded fear of prosecution if it were to violate the contribution limits imposed on political committees. *See NOM*, 714 F.3d at 689. Finally, as discussed, a representative of the BOE informed Plaintiff FNY's counsel that contribution limits apply to independent-expenditure only committees and, therefore, Plaintiff FNY has not received any indication from the BOE that it is free from the "threat of penalty." *Cooksey v. Futrell*, 721 F.3d 226, 241 (4th Cir. 2013) (finding the plaintiff's claim ripe when the state board failed to assure the plaintiff that his conduct was not in violation of the law).

Finally, as discussed, the Court finds that Plaintiffs have sufficiently established that they would suffer a hardship in the absence of review. The allegations in the amended complaint and the material submitted in opposition to Defendants' motion clearly establish that Plaintiffs have a credible fear of enforcement and that this fear has caused them to refrain from the activity "they believe that the First Amendment protects[.]" *Walsh*, 714 F.3d at 689 (citation omitted).

In light of the "somewhat relaxed standing and ripeness rules" applicable to pre-enforcement First Amendment claims, *see NOM*, 714 F.3d at 689, the Court finds that Plaintiffs have standing to pursue their claims and that they are ripe for adjudication. Plaintiffs are not required to violate the Election Law and invite prosecution before they can seek judicial resolution of these constitutional issues.

**D.     Leave to engage in expedited discovery**

Defendants argue that, should the Court deny their motion to dismiss, the Court should grant Defendants leave to engage in expedited discovery. *See* Dkt. No. 18-33 at 19-20. Defendants seek, among other things, "whether FNY in fact intends to engage solely in independent expenditures, . . . whether HLF's 'major purpose' is to engage in express advocacy for or against candidates for public office, rather than in issue advocacy;" and "specific details concerning HLF's and FNY's planned express advocacy in New York State and local elections . . . and their plans to raise sufficient funds to engage in such advocacy." *See id.* at 19.

Defendants' request for expedited discovery is denied. First, the Supreme Court has repeatedly admonished against extensive discovery in election law cases. *See Fed. Elec. Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 469 (2007). Further, most of the information that Defendants seek is entirely irrelevant to the present matter. As Plaintiffs' correctly contend, much of the information Defendants seek is more appropriately sought in an enforcement action if a complaint is ever lodged against Plaintiffs alleging that they violated some aspect of the Election Law. *See* Dkt. No. 29 at 21 & n.5.

Based on the foregoing, the Court denies Defendants' request for expedited discovery.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 18) is **DENIED**; and the Court further

**ORDERS** that Defendants' request for expedited discovery is **DENIED**; and the Court further

**ORDERS** that all further non-dispositive pre-trial matters are referred to Magistrate Judge Dancks; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 26, 2013
      Albany, New York

Mae A. D'Agostino
U.S. District Judge